IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2012

**CORRY TYRONE OWENS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6536   Joseph H. Walker, Judge**

**No. W2011-01622-CCA-R3-PC  - Filed June 29, 2012**

The Petitioner, Corry Tyrone Owens, pled guilty to theft of property valued over $1,000. The trial court sentenced the Petitioner, pursuant to a plea agreement,  to ten years of incarceration, to be served at 45%. The Petitioner filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel, and the post-conviction court dismissed the petition after holding a hearing. On appeal, the Petitioner contends that he received the ineffective assistance of counsel. After a thorough review of the record and applicable authorities, we affirm the post-conviction court's dismissal of his petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Lyle A. Jones, Covington, Tennessee, for the appellant, Corry Tyrone Owens.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Mike Dunavant, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**
**A.  Guilty Plea Hearing**

This case arises from the Petitioner's unlawful taking of two aluminum wheelchair ramps, valued at $3,000. In November 2009, the Tipton County grand jury indicted the

Petitioner for theft of property valued over $1,000. The Petitioner pled guilty to this offense. During the plea submission hearing, the State provided the trial court with the following basis for the Petitioner's guilty plea, informing the trial court that, had the case gone to trial, it would have proven:

> [On] 4/20/09, at approximately 7:30 p.m., Barry Foster of 883 Bethel Road, Atoka, reported two aluminum wheelchair ramps valued at $3,000 were taken from his residence.
>
> On 4/20/09 [the Petitioner] sold two aluminum wheelchair ramps for scrap to Worley Brothers Iron and Metal on 14895 Highway 51, Atoka. The ramps sold by [the Petitioner] were identified as those taken from the [Foster] residence. [The Petitioner] did not have consent of the owner to sell the ramps.
>
> [The Petitioner] is charged with theft of property $1,000 to $10,000, which is a D felony. The State would have called Mr. Foster. Also the State would have called Tremain Reed, Richard Nessly, who spoke with [the Petitioner], and also a Taylor Brewer from Worley Brothers Iron and Metal.

Upon questioning from the trial court, the Defendant stated that he was forty-two years old and had completed the eleventh grade in high school. The trial court reviewed with the Defendant his rights, including that he could plead "not guilty" and have a trial during which he would be represented by an attorney. The trial court informed the Defendant that he could not be compelled to testify, that he could appeal a jury's verdict of guilty, and that, by pleading guilty, he was waiving his rights to a trial and to an appeal. The trial court explained that the Defendant was pleading guilty to a Class D felony and would be sentenced as a Persistent Offender, rather than a Career Offender. The Defendant acknowledged that he understood each of his rights and the plea agreement. The trial court then accepted the Defendant's plea of guilty to the theft of property valued over $1,000.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief,[1] alleging that he had received the ineffective assistance of counsel. The Petitioner's counsel ("Counsel") testified that he was a public defender appointed to represent the Petitioner. Counsel testified that, when he

---

[1] On April 4, 2011, the Petitioner filed a petition for post-conviction relief. Subsequently, on April 20, 2011, he filed a pro se motion to withdraw his guilty plea. In this appeal, he is proceeding on his petition for post-conviction relief and not his motion to withdraw his guilty plea.

was initially appointed to represent the Petitioner, he believed the Petitioner was incarcerated for his prior convictions. He later learned that the Petitioner had been released, so he sent his investigator, Billy Dan Huggins, to the Petitioner's home on multiple occasions in an attempt to locate the Petitioner. Huggins was unsuccessful in locating the Petitioner.

Counsel testified that he filed several pretrial motions, one of which was a motion for discovery from the State. The State offered the discovery, which included several reports from Detective Nessly indicating that the owner of the ramps had contacted the detective. Additionally, the State included in discovery pictures of the wheelchair ramps from Worley Brothers, the location where they had been scrapped, and a photocopy of the Defendant's license, which the Defendant provided to Worley Brothers when he scrapped the ramps. The discovery also included a "scrap ticket" that listed the items received by Worley Brothers as scrap metal.

Counsel agreed that the "scrap ticket" listed the ramps as being five feet by eight feet and that, from the pictures, those dimensions seemed incorrect. Counsel testified that he first spoke with the Petitioner on the day that the Petitioner's case was scheduled for trial. At this time, the two discussed the photographs, the indictment, and the evidence against the Petitioner. Counsel testified that, to ascertain the value of the wheelchair ramps, he personally drove to Worley Brothers and spoke with the employees there. He learned that the Petitioner had been paid two payments, totaling $43.92, for the ramps. Counsel said that he attempted, unsuccessfully, to contact the victim, Frost, to find out how Frost valued the ramps. Counsel then called a local distributor of wheelchair ramps and was informed that the ramps were worth in excess of $1,000 each. Counsel said he saw a similar wheelchair ramp in a local yard and asked the owner the value of the ramp. The owner told him that the VA had purchased the ramp, and he believed it cost around $5,000 to purchase the ramp and also have it installed.

Counsel agreed that the ramps the Petitioner sold were not new ramps, and Counsel did not ascertain the value of used wheelchair ramps. Counsel agreed that, had he taken the case to trial, the jury would have had to determine the value of the wheelchair ramps, and they would have heard that the Petitioner was paid a little more than $40 for the ramps. Counsel said that he discussed with the Petitioner that, if the jury believed the ramps to be worth less than $1,000, they could convict him of the lesser-included offense of theft of property over $500 but less than $1,000.

Counsel testified that the Petitioner expressed his desire not to have his case tried. The State's only offer, however, was for twelve years to be served at 60%, which was the worst punishment that the Petitioner could receive if he took the case to trial. Counsel explained this to the Petitioner, and the two agreed to take the case to trial. A day before the

trial, the State offered ten years to be served at 45%. Counsel said the Petitioner accepted the State's offer.

On cross-examination, Counsel detailed the numerous attempts he made to contact the Petitioner. He said, however, the Petitioner did not return his communication attempts until the morning of the Petitioner's trial date when he arrived at Counsel's office. The Petitioner expressed his desire not to have his case tried, based in part upon the fact that his numerous prior felony convictions. Counsel said he later learned that the Petitioner had sixteen prior felony convictions. Counsel said that, because he had not spoken with the Petitioner before the date of the Petitioner's first scheduled trial, he prepared the case as if it were going to trial.

Counsel testified that the Petitioner's trial was continued, but the trial court revoked his bond and placed him into custody. Counsel and the Petitioner met approximately three to five times while the Petitioner was in custody pending his trial. During these discussions, the Petitioner and Counsel discussed that Counsel would attempt to prove at trial that the wheelchair ramps were worth less than $1,000. Counsel also explained to the Petitioner his sentencing range and release eligibility. The Petitioner said he did not want to go to trial and wanted to accept the State's offer of ten years, to be served at 45%.

David Stockton, a public defender, testified that he represented the Petitioner when his case was before the General Sessions Court. He said the two discussed having a bench trial to determine the value of the wheelchair ramps. Stockton said it was not "really conceivable that the [value of the ramps] would be – a misdemeanor amount . . . ." Stockton testified that the victim placed the value of the ramps at somewhere more than $5,000 and that the State's discovery file showed the ramps valued between $4,000 and $5,000. He recalled Counsel calling businesses to determine what a replacement value for the ramps would be to ascertain their fair market value.

The Petitioner testified that he pled guilty in this case based upon Counsel's advice. He explained, however, that the only reason he had done so was because he did not believe that Counsel was "trying to help [him.]" The Petitioner said Counsel "told [him] to make the plea." He said he asked Counsel to have a property hearing in order for the trial court to establish the value of the property, but Counsel said he could not ask for such a hearing. He said he informed Counsel that Stockton had requested a bench trial to determine the property's value, and Counsel informed him that Counsel did not believe that was in the Petitioner's best interest.

The Petitioner testified that Counsel told him to plead guilty, and the Petitioner asked Counsel if he could get the State to agree to a sentence of less than twelve years, to be served

-4-

at 60%. Counsel later informed him the State had agreed to ten years, to be served at 45%. He again asked Counsel for a valuation hearing, but Counsel informed him that Counsel could not request such a hearing.

The Petitioner looked at the pictures contained in the State's discovery file and said Counsel never showed him those pictures. The Petitioner said he was not denying that he took the wheelchair ramps but that the ramps were four feet by six feet, smaller than listed on his indictment. The Petitioner said Counsel never showed him the indictment, so he was unable to point out this discrepancy to Counsel.

The Petitioner then said that he first learned he had been indicted for stealing two four-foot by eight-foot ramps when he filed his petition for post-conviction relief. He said he was never informed of such during the plea hearing. The Petitioner said that, had he been so informed, he would have told them that the measurements were wrong. The Petitioner said he conducted his own research and discovered that a new four-foot by eight-foot ramp cost $1,800 but that a four-foot by six-foot one cost closer to $618. Additionally, the ramps that he stole were not new and were, therefore, worth less than the new ones.

On cross-examination, the Petitioner testified that he was present during his arraignment, but he maintained he never saw a copy of his indictment or the State's notice to seek enhanced punishment. He said he knew that he could have been sentenced to twelve years of incarceration had a jury convicted him. The Petitioner acknowledged that he lived at the address where Counsel had sent the letters. He did not acknowledge receiving those letters. The Petitioner said his decision to plead guilty was based on Counsel not helping him. The Petitioner testified that Counsel told him that the jury would decide the value of the property. The Petitioner said his response was "Well, how many people y'all know that done won in trial here?" Partly based on this skepticism, the Petitioner decided to plead guilty.

The Petitioner acknowledged that, during his guilty plea hearing, he told the trial court that he understood what he was doing by pleading guilty. He said he also told the trial court that he understood his rights, including his waiver of the right to a jury trial and appeal. He said he told the trial court that he was satisfied with Counsel's representation. The Petitioner said he felt as if his sentence was too long for his offense.

Based upon this evidence, the trial court dismissed the Petitioner's petition for post-conviction relief. The post-conviction court found:

The [P]etitioner has not shown his attorney was deficient in any regard. A hearing was conducted for probation or alternative sentencing, and his attorney presented this issue [of valuation]. The request was denied.

The Court finds that the [Petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [Petitioner] was fully aware of the direct consequences of the plea, including the sentence actually received. He failed to show that any promise or inducement was made for the entry of the plea other than the State agreeing to an agreed sentence at a lesser range tha[n] Career Offender.

The Court finds that Mr. Stockton and [Counsel] provided adequate assistance.

Petitioner failed to show any deficient performance by his attorneys or that he was prejudiced.

A plea hearing is not a mere formality. It serves to insure that the defendant understands his rights and the terms of his plea. *State v. Neal*, 810 S.W.2d 131.

He alleges that his attorney did not properly investigate his case. [The] Petitioner failed to show in what way his attorney failed to investigate, or how he was prejudiced by the failure to investigate.

The Court finds that [the P]etitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-35-210. The [P]etitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The [P]etitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The [P]etitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition because Counsel was ineffective. He asserts that Counsel did not adequately ascertain the value of used wheelchair ramps. Had he done so, the Petitioner asserts, Counsel would have determined that the used wheelchair ramps were valued at "barely . . . over $1,000." The State counters that Counsel went to "great lengths" to try to establish the value of the wheelchair ramps and determined they were valued at more than $1,000. The State contends that the Petitioner has failed to prove that Counsel was deficient or that Counsel's performance prejudiced the Petitioner. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (internal quotations omitted).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Harris v. State*, 875 S.W.2d 662, 665 (Tenn.1994). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea.

Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the case under submission, we agree with the post-conviction court that the Petitioner is not entitled to post-conviction relief. Counsel did, in fact, investigate the value of the wheelchair ramps. He first called Worley Brothers and learned that they had paid little more than $40 for the ramps. Following up, Counsel called a distributer of similar ramps and learned that they were valued in excess of $1,000 each. He asked a man having a similar ramp the ramps value and was told that it was more than $5,000 installed. Counsel also attempted unsuccessfully to contact the victim. Counsel informed the Petitioner that the valuation of the property would be left to the jury to decide and that he would attempt to prove that its value was less than $1,000. The Petitioner, however, expressed his desire not to have his case presented to a jury, opting instead to plead guilty in exchange for a reduced sentence.

At the post-conviction hearing, the Petitioner contended that Counsel should have searched "Craigslist" and "eBay" to determine the value of the used wheelchair ramps that he stole. He offered a document showing that the actual fair market value might be "barely" more than $1,000. We conclude that the Petitioner did not prove by clear and convincing evidence that Counsel's performance was deficient or that he was prejudiced by Counsel's performance. The Petitioner is, therefore, not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE